AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

**FILED**

7/7/2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY         VVC         DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) **Case No.**   23MJ8520 |
| Gray Apple iPhone | ) |
| Model: Unknown | ) |
| IMEI: Unknown | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-11, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 07/06/2023 _____

_____
*Judge's signature*

City and state: El Centro, California

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-11
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-11:**        Gray Apple iPhone
Model: Unknown
IMEI: Unknown
Seized from Ulises LARA-Rocha
**(Target Device #11)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-14 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the period of May 7, 2023, up to and including June 7, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1

## **AFFIDAVIT**

2        I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn,

3  depose and state as follows:

4                              **INTRODUCTION**

5        1.      I submit this affidavit in support of an application for warrant(s) to search

6  the following electronic device(s):

7   **A-1:**                Blue Wiko Cellphone
8                              Model: Unknown
                              IMEI: Unknown
9                              Seized from Enrique LOPEZ-Gomez
10                            **(Target Device #1)**

11  **A-2:**                Red iPhone
12                            Model: Unknown
                              IMEI: Unknown
13                            Seized from Enrique LOPEZ-Gomez
14                            **(Target Device #2)**

15  **A-3:**                Black iPhone
16                            Model: Unknown
                              IMEI: Unknown
17                            Seized from Ramses REYES-Tovar
18                            **(Target Device #3)**

19  **A-4:**                Blue Oppo Cellphone
20                            Model: Unknown
                              IMEI: Unknown
21                            Seized from Javier BALTAZAR-Remigio
22                            **(Target Device #4)**

23  **A-5:**                Black Huawei Cellphone
24                            Model: Unknown
                              IMEI: Unknown
25                            Seized from Jose Donaldo DOLORES-Iturbide
26                            **(Target Device #5)**

27

28

1

**A-6:**    Black Nokia Cellphone
Model: Unknown
IMEI: Unknown
Seized from Jose Donaldo DOLORES-Iturbide
**(Target Device #6)**

**A-7:**    Blue iPhone
Model: Unknown
IMEI: Unknown
Seized from Alan De Jesus FLORES-Munoz
**(Target Device #7)**

**A-8:**    Mobile Cellphone
Model: Unknown
IMEI: Unknown
Seized from Isabel GARCIA-Lorenzo
**(Target Device #8)**

**A-9:**    Black Samsung Cellphone
Model: Unknown
IMEI: Unknown
Seized from Jose GUERRERO-Guevara
**(Target Device #9)**

**A-10:**   White Samsung
Model: Unknown
IMEI: Unknown
Seized from Christian Yahir HERRERA-Santos
**(Target Device #10)**

**A-11:**   Gray Apple iPhone
Model: Unknown
IMEI: Unknown
Seized from Ulises LARA-Rocha
**(Target Device #11)**

**A-12:**   Black Zuum Cellphone
Model: Unknown
IMEI: Unknown
Seized from Lourdes MENDOZA-Galvez
**(Target Device #12)**

**A-13:**    Gray Samsung Cellphone
Model: Unknown
IMEI: Unknown
Seized from Jorge OLLUA-Calixto
**(Target Device #13)**

**A-14:**    Sky Cellphone
Model: Unknown
IMEI: Unknown
Seized from Brisly Siomara OROZCO-Miranda
**(Target Device #14) (collectively "Target Devices")**

as further described in Attachments A-1 to A-14, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Enrique LOPEZ (LOPEZ) and Ramses REYES-Tovar (REYES) for transportation of illegal aliens Jose GUERRERO-Guevara (GUERRERO), Javier BALTAZAR-Remigo (BALTAZAR), Alan De Jesus FLORES-Munoz (FLORES), Ulises LARA-Rocha (LARA), Jose Donaldo DOLORES-Iturbide (DOLORES), Christian HERRERA-Santos (HERRERA), Lidia GARCIA-Lopez (GARCIA), Lourde MENDOZA-Galvez (MENDOZA), Jorge OLLUA-Calixto (OLLUA), Isabel GARCIA-Lorenzo (GARCIA), Brisly Siomara OROZCO-Miranda (OROZCO) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from LOPEZ, REYES and the Material Witnesses on or about June 6, 2023, incident to the arrest of LOPEZ, REYES and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation.

The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.   For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.   Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as

images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On June 6, 2023, operators in the Remote Video Surveillance System (RVSS) room were conducting surveillance approximately seven miles east of Calexico Port of Entry. This area of the border between the United States and Mexico is clearly marked by a 20-foot-tall metal fence that separates the two countries. Approximately 100 feet north of the border fence is the All-American Canal (AAC), a water way which spans approximately 50 feet wide and flows westbound parallel to the border. The East Calexico Port of Entry is in this area, as well as a complex of warehouses and west of the port are

agriculture fields bordered by numerous irrigation canal, laterals and dirt drains. This area is consistently used by smugglers to smuggle illegal aliens into the United States.

11.     At approximately 6:11 pm, Border Patrol Agent M. Rojas, who was assigned to the RVSS room, observed a white colored pickup truck, later identified as a 2011 white Ford F-150 Bearing California plates, driving eastbound along the International Border Fence (IBF) towards the Calexico East Port of Entry. Agent Rojas observed the Ford reach the area where the Alamitos Canal and the AAC intersect. Agent Rojas observed several suspected illegal aliens slide down from the top of the IBF and land on the US side. Shortly thereafter he observed a group suspected illegal aliens board the Ford. Agent Rojas observed the Ford conduct a U-turn and head back westbound along the IBF. Agent Rojas observed that the Ford was heading back towards the area known as the "5 Area". Agent Rojas relayed all this information to agents in the field via Service radio.

12.     Border Patrol Agent Herrera, who was driving a fully marked Border Patrol vehicle, responded to "5 Area". He then observed the Ford driving westbound along the IBF. At this time, Agent Herrera observed the Ford stop and the group of suspected illegal aliens dismounted from the vehicle and began to run away northbound towards the AAC. Agent Herrera drove his Service vehicle up to the Ford with his Service vehicle's emergency lights activated. As Agent Herrera drove up to the Ford, the vehicle drove passed his Service vehicle heading westbound. Agent Herrera then followed behind the Ford.

13.     Agent Herrera, with his emergency lights still activated, pursued the fleeing Ford as it drove northbound towards Highway 98. Agents responded to the area of Highway 98 and the Briar Canal north of the fleeing Ford. The agents up on Highway 98 communicated that they would there to deploy a Vehicle Immobilization Device (VID). Supervisory Border Patrol Agent A. Mills, who was driving an unmarked Service vehicle, observed the Ford. Agent Mills observed the Ford reach Highway 98 and turn westbound. Agent Mills got behind the Ford and followed behind westbound on Highway 98. Agent

1   Mills relayed the description of the Ford and its current location to agents who were setup
2   with VID's west of the fleeing Ford.

3       14.      Border Patrol Agent J. Chrisley, who parked at the intersection of Bowker
4   Road and Highway 98, observed the fleeing Ford approach his position. As the Ford
5   approached, he observed that the Ford slowed down to a near stop. Agent Chrisley
6   deployed his VID into the roadway in front of the Ford. The Ford conducted an abrupt U-
7   turn to avoid contact with the VID but both right side tires of the Ford drove over the VID.
8   Agent Mills observed the Ford drive eastbound on Highway 98 for approximately 50 feet
9   before conducting another U-turn on Highway 98. Agent Mills then observed the Ford
10   drive off-road on the dirt shoulder, drive around two Service vehicles, nearly hitting a
11   utility pole, and turned northbound on Bowker Road.

12       15.      Agent Mills followed behind the fleeing Ford as it drove northbound on
13   Bowker Road. The Ford drove through the stop sign at the intersection without stopping at
14   approximately 60 mph. Agent Mills followed behind the fleeing Ford northbound on
15   Bowker Road for approximately one mile before the Ford pulled to the shoulder and
16   stopped.   Agent Mills, Agent Herrera and Border Patrol Agent (Intelligence) A. Tapia
17   approached the Ford. Agent Mills, who was wearing full Border Patrol uniform, identified
18   himself as a United States Border Patrol Agent to the occupants of the Ford. Agent Mills
19   ordered the driver of the Ford, later identified as Enrique LOPEZ-Gomez, to exit the
20   vehicle. LOPEZ exited the Ford and he was detained. Agents Tapia and Herrera ordered
21   the front seat passenger of the Ford, later identified as Ramses REYES-Tovar, to exit the
22   vehicle and they detained him. Agent Mills conducted an immigration interview with
23   LOPEZ and REYES and determined that they both were United States citizens. LOPEZ
24   and REYES were arrested for 8 USC 1324.

25       16.      Border Patrol Agent A. Aguilar responded to the area where the suspected
26   illegal aliens exited the Ford and detained 12 suspected illegal aliens. Agent Aguilar
27   identified himself as a United States Border Patrol Agent to the 12 suspected illegal aliens
28   later identified as Javier BALTAZAR-Remigio, Jose Donaldo DOLORES-Iturbide, Alan

De Jesus FLORES-Munoz, Lidia GARCIA-Lopez, Isabel GARCIA-Lorenzo, Jose GUERRERO-Guevara, Christian Yahir HERRERA-Santos, Ulises LARA-Rocha, Lourde MENDOZA-Galvez, Jorge OLLUA-Calixto, and Brisly Siomara OROZCO-Miranda. It was determined that they all were Mexican citizens illegally present in the United States.

17.    During LOPEZ's arrest, Supervisory Border Patrol Agent A. Mills, found a blue WIKO cellphone (**Target Device #1**) in LOPEZ's pants pocket. This cellphone was claimed by LOPEZ. Also, during an inventory search of the Ford, Border Patrol Agent J. Bourque found a red iPhone cellphone (**Target Device#2**) on the floor on the driver's side. This cellphone was claimed by LOPEZ. These cellphones were seized as evidence. During REYES's arrest, Border Patrol Agent E. Herrera, found a black iPhone (**Target Device #3**) in REYES's pants pocket. This cellphone was claimed by REYES. This cell phone was seized as evidence. During the arrest of the illegal aliens, Border Patrol Agent A. Aguilar, found that 11 of the illegal aliens had cellphones in their possession (**Target Device # 4 – Target Device #14**). These cellphones will be seized as evidence. The Ford was seized as a smuggling conveyance.

18.    Material Witness BALTAZAR provided a statement in the Spanish language. BALTAZAR stated he is a citizens of Mexico and does not have any legal documents allowing him to live, work, or remain in the United States legally. BALTAZAR stated that he was to pay $13,000 USD to be illegally smuggled into the United States. BALTAZAR stated that he illegally entered the United States today by climbing the wall near Mexicali. BALTAZAR stated that he was instructed to climbed border fence and wait for a vehicle to arrive at his location. BALTAZAR stated that he waited for approximately three hours for a vehicle to arrive at his location. BALTAZAR stated that a white truck arrived, and he boarded the bed of the truck. BALTAZAR stated that the truck drove for one to two minutes before it stopped. BALTAZAR stated that the pickup drove in reverse a short distance and stopped again. BALTAZAR stated that the driver told everyone to get out. BALTAZAR stated that they were apprehended by the Border Patrol moments later.

19.     Material Witness DOLORES was provided a statement in the Spanish language.  DOLORES stated he is a citizen of Mexico. DOLORES stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. DOLORES stated that he was to pay 10,000 USD to be illegally smuggled into the United States.  DOLORES stated that he illegally entered the United States today by climbing the wall near Mexicali. DOLORES stated that he was instructed to climbed border fence and wait for a vehicle to arrive at his location. DOLORES stated that he waited for approximately three hours for a vehicle to arrive at his location.  DOLORES stated that a white truck arrived, and he boarded the back of it. DOLORES stated that the truck drove for one to two minutes before it stopped. DOLORES stated that the pickup drove in reverse a short distance and stopped again. DOLORES stated that they were apprehended by the Border Patrol moments later.

20.     Material Witness FLORES provided a statement in the Spanish language. FLORES stated he is a citizen of Mexico. FLORES stated that he does not have any legal documents allowing him to live, work, or remain in the United States legally.  FLORES stated that he was to pay $9,500 USD to be illegally smuggled into the United States. FLORES stated that he illegally entered the United States today by climbing the wall near Mexicali. FLORES stated that he was instructed to climb the border fence and wait for a vehicle to arrive at his location. FLORES stated that he waited for approximately three hours for a vehicle to arrive at his location.  FLORES stated that a white truck arrived, and he boarded the bed of the truck. FLORES stated that the truck drove for one to two minutes before it stopped. FLORES stated that the pickup drove in reverse a short distance and stopped again. FLORES stated that the driver told everyone to get out.  FLORES stated that they were apprehended by the Border Patrol moments later.

21.     Material Witness GUERRERO provided a statement in the Spanish language. GUERRERO stated he is a citizen of Mexico. GUERRERO stated that he does not have any legal documents allowing him to live, work, or remain in the United States legally. GUERRERO stated that he was to pay $5,000 USD to be illegally smuggled into the United

States.  GUERRERO stated that he illegally entered the United States today by climbing the wall near Mexicali. GUERRERO stated that a white truck arrived, and he boarded the bed of the truck. GUERRERO stated that the truck drove a short distance and stopped and told him to get out.   GUERRERO stated that he hid near some brush near the canal. GUERRERO stated that they were apprehended by the Border Patrol moments later.

22.     Material Witness HERRERA was provided a statement in the Spanish language.  HERRERA stated he is a citizen of Mexico. HERRERA stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. HERRERA stated that he does not know how much he was to pay to be illegally smuggled into the United States.  HERRERA stated that he illegally entered the United States today by climbing the wall near Mexicali. HERRERA stated that he was instructed to climbed border fence and wait for a vehicle to arrive at his location. HERRERA stated that he waited for approximately three hours for a vehicle to arrive at his location.  HERRERA stated that a white truck arrived, and he boarded the bed of the truck. HERRERA stated that the truck drove for a few moments before it stopped. HERRERA stated that they were apprehended by the Border Patrol moments later.

23.     Material Witness GARCIA-Lopez provided a statement in the Spanish language. GARCIA-Lopez stated that she does not have any legal documents allowing her to live, work or remain in the United States legally.  GARCIA-Lopez stated that she does not know how much she was to pay to be illegally smuggled into the United States. GARCIA-Lopez stated that she illegally entered the United States today by climbing the wall near Mexicali. GARCIA-Lopez stated that she was instructed to climbed border fence and wait for a vehicle to arrive at her location. GARCIA-Lopez stated that she waited for approximately two hours for a vehicle to arrive at his location.  GARCIA-Lopez stated that a white truck arrived, and she boarded a back seat of the truck. GARCIA-Lopez stated that the truck drove for a few moments before it stopped. GARCIA-Lopez stated that they were apprehended by the Border Patrol moments later.

24.     Material Witness GARCIA-Lorenzo provided a statement in the Spanish language. GARCIA stated that her true and correct name is Isabel GARCIA-Lorenzo. GARCIA-Lorenzo stated she was born on in Oaxaca, Mexico and stated that she is a citizen of Mexico.  GARCIA-Lorenzo stated that she does not possess any immigration documents that would allow her to work or reside in the United States legally.  GARCIA-Lorenzo stated she made arrangements for herself to be smuggled to the United States illegally for $15,000.00. GARCIA-Lorenzo stated that she was instructed to climbed border fence and wait for a vehicle to arrive at her location. GARCIA-Lorenzo stated that she waited for approximately one hour for a vehicle to arrive at her location. GARCIA-Lorenzo stated that vehicle arrived and she boarded the backseat. GARCIA-Lorenzo stated that after she boarded, she was told to get out. GARCIA-Lorenzo stated that she hid near some brush near the canal. GARCIA-Lorenzo stated that they were apprehended by the Border Patrol moments later.

25.     Material Witness LARA provided a statement in the Spanish language. LARA stated he is a citizen of Mexico. LARA stated that he does not have any legal documents allowing him to live, work, or remain in the United States legally.  LARA stated that he was to pay $13,500 USD to be illegally smuggled into the United States.  LARA stated that he illegally entered the United States today by climbing the wall near Mexicali. LARA stated that he was instructed to climbed border fence and wait for a vehicle to arrive at his location. LARA stated that he waited for approximately three hours for a vehicle to arrive at his location.  LARA stated that a white truck arrived, and he boarded the bed of the truck. LARA stated that the truck drove for one to two minutes before it stopped. LARA stated that the pickup drove in reverse a short distance and stopped again. LARA stated that the driver told everyone to get out.  LARA stated that they were apprehended by the Border Patrol moments later.

26.     Material Witness MENDOZA provided a statement in the Spanish language. MENDOZA stated that she does not have any legal documents allowing her to live, work, or remain in the United States legally.  MENDOZA stated that she was to pay $16,000 or

$17,000 to be illegally smuggled into the United States. MENDOZA stated that she illegally entered the United States today by climbing the wall near Mexicali. MENDOZA stated that she was instructed to climbed border fence and wait for a vehicle to arrive at her location. MENDOZA stated that she waited for approximately two hours for a vehicle to arrive at his location. MENDOZA stated that a white truck arrived, and she boarded a back seat of the truck. MENDOZA stated that the truck drove for a few moments then she was told to get out. MENDOZA stated that they were apprehended by the Border Patrol moments later.

27.      Material Witness OLLUA provided a statement in the Spanish language. OLLUA stated that he is a citizen of Mexico. OLLUVA stated that he does not possess any immigration documents that would allow him to work or reside in the United States legally. OLLUA stated that he currently lives in Mexico City, Mexico. OLLUA stated he made arrangements for himself to be smuggled to the United States illegally for $13,000.00 or $14,000.00. OLLVA stated he arrived at Mexicali, Baja California, yesterday. OLLUA stated that he was instructed to climbed border fence and wait for a vehicle to arrive at his location. OLLUA stated that he waited for approximately two to three hours for a vehicle to arrive at his location. OLLUA stated that a white truck arrived, and he boarded the bed of the truck. OLLUA stated that the truck drove a short distance and stopped and told him to get out. OLLUA stated that he hid near some brush near the canal. OLLUA stated that they were apprehended by the Border Patrol moments later.

28.      Material Witness OROZCO provided a statement in the Spanish language. OROZCO stated that she is a citizen of Mexico. OROZCO stated that she does not possess any immigration documents that would allow her to work or reside in the United States legally. OROZCO stated she made arrangements for herself in Oaxaca, Mexico to be smuggled to the United States illegally for $75,000.00 Mexican Pesos ($4,411.00 dollars). OROZCO stated she arrived in Mexicali, Baja California, approximately one week ago. OROZCO stated that she climbed the border fence and waited for a vehicle to arrive at her location. OROZCO stated that she waited for approximately two hours for a vehicle to

arrive at her location.  OROZCO stated that a white or black vehicle arrived, and she boarded the back seat of the vehicle. OROZCO stated that the truck drove a short distance and everyone in the truck got out. OROZCO stated that she hid near a canal. OROZCO stated that they were apprehended by the Border Patrol moments later.

29.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on May 7, 2023, up to and including, June 7, 2023, the day after the arrest of LOPEZ, REYES and the Material Witnesses.

## METHODOLOGY

30.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be

acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

31.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

32.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

38.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that LOPEZ, REYES and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by LOPEZ, REYES, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.


I swear the foregoing is true and correct to the best of my knowledge and belief.


Fernando Quiroz, Border Patrol Agent
United States Border Patrol


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 6th day of July, 2023.


2:19 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1**:          Blue Wiko Cellphone
              Model: Unknown
              IMEI: Unknown
              Seized from Enrique LOPEZ-Gomez
              **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2**:          Red iPhone
                  Model: Unknown
                  IMEI: Unknown
                  Seized from Enrique LOPEZ-Gomez
                  **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:           Black iPhone
                    Model: Unknown
                    IMEI: Unknown
                    Seized from Ramses REYES-Tovar
                    **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**       Blue Oppo Cellphone
Model: Unknown
IMEI: Unknown
Seized from Javier BALTAZAR-Remigio
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**  Black Huawei Cellphone
Model: Unknown
IMEI: Unknown
Seized from Jose Donaldo DOLORES-Iturbide
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-6
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-6:**          Black Nokia Cellphone
                  Model: Unknown
                  IMEI: Unknown
                  Seized from Jose Donaldo DOLORES-Iturbide
                  **(Target Device #6)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-7
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-7**:          Blue iPhone
                 Model: Unknown
                 IMEI: Unknown
                 Seized from Alan De Jesus FLORES-Munoz
                 **(Target Device #7)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-8
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-8:**          Mobile Cellphone
                Model: Unknown
                IMEI: Unknown
                Seized from Isabel GARCIA-Lorenzo
                **(Target Device #8)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## <u>ATTACHMENT A-9</u>
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-9**</u>:     Black Samsung Cellphone
Model: Unknown
IMEI: Unknown
Seized from Jose GUERRERO-Guevara
**(Target Device #9)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-10**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-10**:   White Samsung
    Model: Unknown
    IMEI: Unknown
    Seized from Christian Yahir HERRERA-Santos
    **(Target Device #10)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-11
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-11:**          Gray Apple iPhone
                 Model: Unknown
                 IMEI: Unknown
                 Seized from Ulises LARA-Rocha
                 **(Target Device #11)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-12**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-12:**         Black Zuum Cellphone
                  Model: Unknown
                  IMEI: Unknown
                  Seized from Lourdes MENDOZA-Galvez
                  **(Target Device #12)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-13
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-13:**      Gray Samsung Cellphone
             Model: Unknown
             IMEI: Unknown
             Seized from Jorge OLLUA-Calixto
             **(Target Device #13)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-14
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-14:**  Sky Cellphone
Model: Unknown
IMEI: Unknown
Seized from Brisly Siomara OROZCO-Miranda
**(Target Device #14)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-14 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the period of May 7, 2023, up to and including June 7, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.